OREST T. DUBNO, COMMISSIONER OF REVENUE SERVICES *v.* ESTATE OF PEARSON

SUPERIOR COURT JUDICIAL DISTRICT OF FILE No. 190929
FAIRFIELD AT BRIDGEPORT

Memorandum filed August 8, 1982

*William J. Friedeberg,* tax attorney, for the plaintiff.

*Wofsey, Rosen, Kweskin & Kuriansky,* for the defendant.

DRISCOLL, J. This is an appeal from probate. The Probate Court held that an individual retirement account created solely from the proceeds of an employee's trust, which had been funded entirely by the employer, is excludable from the decedent's gross estate under the provisions of General Statutes § 12-349.

The facts are undisputed. Upon his separation from employment due to a terminal illness, the decedent received 100 percent of the funds credited to his account under a qualified profit-sharing plan. The plan was of the noncontributory type, since the decedent made no payments into it. Within sixty days of receipt of the funds, the decedent rolled the money over into an individual retirement account (hereinafter IRA). That transfer qualified as tax-exempt under the Internal Revenue Code (1982) §§ 402 (a) (5) and 403 (a) (4). The IRA was held in the form of an annuity payable to the decedent's wife. No part of the IRA derived from the decedent's own funds.

The commissioner of revenue services challenges the Probate Court's holding. Both parties have moved for summary judgment.

The question before the court is whether the IRA in question is exempt from the Connecticut succession tax under General Statutes § 12-349. The pertinent portion of § 12-349 reads as follows: "There shall, however, be excluded from the gross estate the value of an annuity or other payment receivable after the death of the decedent by any beneficiary, other than the decedent's estate, under an employees' trust or plan, or under a contract purchased by an employees' trust or plan, forming part of a pension, stock bonus or profit-

sharing plan, or under a retirement annuity contract purchased by an employer pursuant to a plan, provided at the time of decedent's separation from employment, by death or otherwise, or at the time of termination of the plan, if earlier, payments to or in respect of such trust, plan or annuity were exempt from federal income taxation under the United States Internal Revenue Code. If such amounts payable after the death of the decedent under a plan above described are attributable to any extent to payments or contributions made by the decedent, no exclusion shall be allowed for that part of the value of such amounts in the proportion that the total payments or contributions made by the decedent bears to the total payments or contributions made. For purposes of the preceding sentence, contributions or payments made by the decedent's employer or former employer shall not be considered to be contributed by the decedent, if made to or in respect to a trust, plan or annuity exempt from federal income taxation under the United States Internal Revenue Code."

To qualify for exclusion the annuity or payment must come under one of the three listed categories. It must be (a) under an employee's trust or plan; (b) under a contract purchased by an employee's trust or plan; or (c) under a retirement annuity contract purchased by an employer pursuant to a plan. The defendant focuses on the concluding phrase of the first sentence and contends that the funds are excludable from the gross estate provided only that they were exempt from federal income taxation. Another argument advanced by the defendant is that since the funds were exclusively derived from the employer's contribution, the IRA may be said to be "a retirement annuity contract purchased by the employer." In support of the proposition that this account should be tax exempt, the defendant urges the court to review the section's legislative history. That history includes the fact that the act was amended three times but at no time was any language included with respect to the situation presently before the court.

The issue here centers upon an interpretation of the intent and purpose of § 12-349. When confronted with ambiguity in the intent and purpose of a legislative enactment, the courts will apply the rules of statutory construction to ascertain the actual intention expressed by the language used. *Farms Country Club, Inc.* v. *Carini,* 172 Conn. 439, 443, 374 A.2d 1094 (1977). General rules of statutory construction are but imprecise and uncertain guides to the legislative intent behind an ambiguous enactment and must be employed with caution. *Levin-Townsend Computer Corporation* v. *Hartford,* 166 Conn. 405, 411, 349 A.2d 853 (1974). If ambiguity is present the court looks behind literal meaning of words. It looks to the history, to the language of the law in all its parts, to the evil it was designed to remedy and to the policy underlying it. *Kellems* v. *Brown,* 163 Conn. 478, 505, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973). Where the wording is plain courts will not speculate as to any supposed intention of the legislature. *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 133, 355 A.2d 236 (1974). While it is true that a statute should be construed to give effect to legislative intent, when statutory language is unambiguous that intent is to be found not in what the legislature meant to say but in the meaning of what it did say. *Kellems* v. *Brown,* supra, 505. It is not the function of courts either to read into clearly expressed legislation provisions which do not find expression in its words, or to substitute its own ideas of what might be a wise provision in the place of a clear expression of the legislative will. *International Business Machines Corporation* v. *Brown,* supra, 134. "That a construction of a statute might in exceptional cases work to the disadvantage of a taxpayer who may be affected does not justify a construction violating an expressed intent of the legislature. . . . It is a legislative, not a judicial, function to reduce the hard-

ships resulting from a statute." (Citations omitted.) *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 416, 311 A.2d 65 (1972).

Current federal income tax law allows a participant in a qualified plan to transfer his entire benefit within sixty days of receipt into an individual retirement arrangement. Internal Revenue Code (1982) § 402 (a) (5). A "qualified plan" or "qualified employee benefit plan" means any pension or profit-sharing plan which complies with the requirements of Internal Revenue Code (1982) § 401 and which is maintained by corporations. To qualify for a complete rollover, the distribution received by a participant must constitute his total interest in the distribution plan. That interest must be given to the participent, in its entirety, within a single taxable year. The distribution must also meet certain other listed requirements. See Zelinsky, "The Taxation of Qualified Employee Plan Benefits: A Brief Stroll through the 'Statutory Thicket,' " 53 Conn. B.J. 475 (1979). The parties agree that for purposes of federal income tax the IRA in question is exempt under the applicable Internal Revenue Code sections.

Connecticut's succession tax originated in 1889. *Watrous* v. *Connelly,* 141 Conn. 257, 259–60, 105 A.2d 654 (1954). The succession tax is a tax upon the privilege of beneficial succession and is levied with regard to that portion of the estate which will pass to the transferees. Id., 262. "Since the right to transmit or receive property upon the death of the owner is not an inherent right but purely a privilege granted by the State . . . that privilege may be abridged or coupled with conditions at the will of the State." *Blodgett* v. *Bridgeport City Trust Co.,* 115 Conn. 127, 142, 161 A. 83 (1932). How the tax will be computed and what shall constitute allowable deductions and exceptions rest in legislative discretion. *Watrous* v. *Connelly,* supra, 265.

Section 12-349 directs that a tax shall be imposed on all of the gross taxable estate less the listed deductions. The language of the section is clear and specific. There is no language permitting exclusion of an IRA account from the taxable estate. The funds from the employee's plan were made available to the decedent. The IRA account cannot be said to be a "retirement annuity contract purchased by the employer" since it was the decedent himself who set up the account. It is of little importance that the funds placed in the account had originated from an employer funded plan.

The court finds therefore that the Probate Court erred in concluding that § 12-349 exempts from the Connecticut succession tax the proceeds of an IRA established by the decedent during his lifetime from funds received from the termination of a pension or profit-sharing plan which was itself tax exempt from federal income taxation. Summary judgment therefore may be granted to the commissioner of revenue services.

The motion of the estate of Pearson for summary judgment is denied.