FARMS COUNTRY CLUB, INC. *v.* JOSEPH C. CARINI
ET AL.

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and BARBER, Js.

Argued November 10, 1976—decision released February 22, 1977

*Richard C. Hannon, Jr.,* with whom were *Kenneth F. Secol* and, on the brief, *Robert L. Fay,* for the appellant (plaintiff).

*Adam Mantzaris,* assistant town attorney, with whom, on the brief, were *Brian J. Farrell* and *Lester B. Snyder,* for the appellees (defendants).

BOGDANSKI, J. This appeal arises from an action for mandamus to compel the mayor and town council of Wallingford to order the refund of taxes paid to the town by the plaintiff, totaling $32,578.52, plus interest. From a judgment in favor of the defendants the plaintiff has appealed, assigning error in the refusal to find material facts, in the overruling of its claims of law, and in the conclusions reached.

The finding discloses the following facts: The plaintiff, Farms Country Club, Inc., is a private country club which operates a private golf course and other recreational facilities in the town of Wallingford. The Gaylord Farm Association, hereinafter Gaylord, is a charitable corporation with its principal place of business in the town of Walling-

ford. On July 1, 1961, Gaylord was the owner of 302 acres of land located in Wallingford devoted to the charitable purpose of providing hospitalization to disabled residents of Connecticut. On January 11, 1962, Gaylord leased 148 acres of that land to the plaintiff for a term of 100 years, with annual rent reserved, for use as a private country club. Prior to the leasing, the entire 302-acre parcel was exempt from real property taxation by the town of Wallingford. Since July 1, 1961, the 148-acre parcel leased to the plaintiff has been assessed annually in the name of the plaintiff as lessee and the taxes thereon have been paid to the town of Wallingford by the plaintiff. That assessment was made pursuant to the provisions of § 12-66 of the General Statutes. The plaintiff paid the entire tax due on the leased land for the years 1968, 1969, 1970 and 1971. No real estate taxes were assessed against the leased premises in the name of Gaylord from 1961 nor did Gaylord pay any taxes on the premises since 1961.

On January 7, 1972, pursuant to the provisions of § 12-66 (b)[1] of the General Statutes, the plaintiff

---

[1] "[General Statutes] Sec. 12-66. PROPERTY OF RELIGIOUS, EDUCATIONAL OR CHARITABLE CORPORATIONS; LEASEHOLD INTERESTS. (a) Lands or buildings, the title to which is in the name of any religious, educational or charitable corporation, otherwise exempt from taxation and which have been leased for a term of one hundred years or more by a lease executed with an annual rent reserved, which land and buildings are used for other than religious, educational or charitable purposes, shall, annually, be subject to local assessment and taxation in the name of the lessee, assignee or sublessee of such land on the assessment day of the town wherein situated. Except as provided in this section, all provisions of the law relating to the filing of assessment lists and appeals to the boards of tax review and to the court of common pleas shall, mutatis mutandis, apply to each such lessee and all provisions of the law relating to assessors and boards of tax review shall, mutatis mutandis, apply to such

applied to the tax collector for a tax refund of taxes paid on the tax lists of October 1, 1968, 1969 and 1970. On October 17, 1972, the plaintiff applied for a tax refund of an amount assessed and paid on the tax list of October 1, 1971. The tax collector received the applications, verified the amounts paid as taxes, the amounts paid as rent and the amounts claimed as refunds, and certified those amounts to the defendants as accurate. The town council, however, refused to order payment of any tax refund.

The trial court found that the 148-acre parcel under lease would be taxable to a charitable organization like Gaylord if used as a private country club; see General Statutes §§ 12-64, 12-81 (7) and 12-88; that the payment of taxes with a right of refund is equivalent to an exemption from the burden of taxation, whether in whole or in part; and that a refund under § 12-66 (b) in the present circumstances amounts to a tax exemption for the property under lease. It then concluded that "[i]t would be an absurdity to presume that the legisla-

property. (b) Any person who has paid the entire tax due any town for a period of twelve months on any such property may make application in writing to the tax collector of such town for a refund of the whole or such part of such tax as represents, under the terms of the lease, the amount of rent paid to such corporation for such period. Such application shall be made within three years of the due date of the whole or first instalment of such tax, shall contain a recital of the facts and shall state the amount of refund requested. The collector shall, after examination of such application, refer the same, with his recommendations thereon, to the selectmen of such town and shall certify to the amount of refund to which such applicant is entitled. Upon receipt of such application and certification, the selectmen shall draw an order upon the treasurer in favor of such applicant for the amount so certified, without interest. Any action so taken by such selectmen shall be a matter of record and the tax collector shall be notified thereof in writing. (c) This section shall be construed to authorize taxation of leased real estate under such lease."

ture intended by Section 12-66 (b) to upset long established principle and policy regarding release from taxation of property of charitable organizations used for charitable purposes and to grant such freedom from taxation to a lessee not using the property for a charitable purpose and under circumstances that do not absolve even a charitable organization from liability to taxes," and that § 12-66 (b) "does not apply to entitle plaintiff to a refund of the claimed taxes under present circumstances."

The plaintiff contends that the court erred in reaching its conclusions; that the language of § 12-66 is clear and unambiguous, and where this is so, its meaning is not subject to modification by construction; that effect must be given to the legislative intent as expressed by the wording of the statute; that courts cannot read into a statute something which is not there in order to reach what the court thinks would be a just result; and that a due regard for the differing functions of the legislative and judicial branches of government requires that the courts refrain from rewriting the expressed language of a statute.

The issue then centers upon an interpretation of § 12-66, its intent and purpose, with particular reference to subsection (b). Subsections (a) and (c) of § 12-66 which authorize the taxation of the leased property appear inconsistent with the literal operation of subsection (b) so as to make the intent and purpose of § 12-66 ambiguous. When confronted with ambiguity in the intent and purpose of a legislative enactment, it becomes necessary to apply the rules of statutory construction to ascertain the actual intention expressed by the language used.

Statutes are to be construed so as to carry out the intent of the legislature. *Little* v. *Ives,* 158 Conn. 452, 455, 262 A.2d 174. Where ambiguity exists, a court is not confined to the literal meaning of the words. *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 207–208, 91 A.2d 773. There is a presumption that the legislature, in enacting a law, did so in view of the existing relevant statutes and intended it to be read with them so as to make one consistent body of law. *Norwalk* v. *Daniele,* 143 Conn. 85, 87, 119 A.2d 732. In the absence of an intent clearly expressed, the court cannot impute to the legislature an intent which involves a departure from existing statutes; *State ex rel. Rourke* v. *Barbieri,* supra, 209; nor will the court impute to the legislature an intent to pass antagonistic legislation. *Wilson* v. *West Haven,* 142 Conn. 646, 656, 116 A.2d 420. Statutes are repugnant only when they cannot reasonably be given effect. If courts can by any fair interpretation find a reasonable field of operation for two statutes without destroying their evident meaning, it is the duty of the courts to do so, thus reconciling them and according to them concurrent effect. *Shanley* v. *Jankura,* 144 Conn. 694, 702, 137 A.2d 536.

Gaylord was organized and established to maintain a hospital in New Haven County on a nonprofit basis. If the leased property were taxed to Gaylord, pursuant to § 12-64, no refund could be made since the property would not be used for a charitable purpose, and therefore would not qualify for an exemption under § 12-88. *Hartford Hospital* v. *Board of Tax Review,* 158 Conn. 138, 146, 256 A.2d 234. To give effect to § 12-66 (b) and refund the taxes to the plaintiff as requested would be to accord the prop-

erty when held by the plaintiff a release from the burden of taxation that is not given even to a charitable corporation such as Gaylord.

It cannot be presumed that the legislature intended § 12-66 (b) to operate in contravention of the provisions of §§ 12-64 and 12-88. Taxation is an act of sovereignty to be enforced, so far as it conveniently can, with justice and equality for all. *Hartford* v. *Hartford Theological Seminary*, 66 Conn. 475, 482, 34 A. 483. " '[T]he legislature ordinarily intends its laws to apply to all equally; it does not intend to grant privileges to select individuals. So when exceptions or special privileges are claimed under a statute, this ordinary or presumptive intention is entitled to weight, according to the circumstances, in ascertaining the actual intention expressed by the language used.' *Yale University* v. *New Haven*, 71 Conn. 316, 329, 42 Atl. 87." *McLaughlin* v. *Poucher*, 127 Conn. 441, 444, 17 A.2d 767.

Subsections 12-66 (a) and (c) are intended to provide municipalities with an alternative source for the collection of the real property tax by giving the towns the choice of pursuing either the charitable organization or the 100-year lessee. The legislative intent of § 12-66, read as a whole together with other relevant statutes, can reasonably be seen as applying to prevent the property of a charitable organization not used exclusively for a charitable purpose from escaping taxation, whether as against either the charitable organization or the lessee, and to avoid an assessment of taxes from being collected twice by a municipality. See Warren, Krattenmaker & Snyder, "Property Tax Exemptions for Charitable, Educational, Religious and Governmental Institutions in Connecticut," 4 Conn. L. Rev. 181, 284-85.

The town of Wallingford has collected the taxes in question only once, that is from the plaintiff lessee. Whatever other purposes and intents § 12-66 (b) may have, it is not one to free the real property of a charitable organization, leased under the provisions of § 12-66 and used exclusively for private gain, from any and all taxation. In the circumstances of this case, we conclude that subsection (b) of § 12-66 does not apply to entitle the plaintiff to a refund of the claimed taxes.

Our ruling on the principal issue involved in this appeal makes discussion of the plaintiff's assignment of error directed at the court's finding unnecessary.

There is no error.

In this opinion the other judges concurred.