STATE OF CONNECTICUT *v.* WILLIE BURNEY
(10702)

SPEZIALE, C. J., PETERS, PARSKEY, SHEA and GRILLO, Js.

Argued November 9, 1982—decision released February 22, 1983

---

*Frank S. Meadow* and *Earl I. Williams,* for the appellant (defendant).

*Robert J. Devlin, Jr.,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

SPEZIALE, C. J. The defendant was charged with sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (3),[1] and with incest, in violation of General Statutes § 53a-191 (a).[2] Tried before a jury in November, 1980, the defendant was acquitted of the crime of incest but found guilty of sexual assault in the second degree. The defendant appeals from the judgment rendered following that conviction, claiming, inter alia, that the trial court erred in denying the defendant's motion for acquittal because the state failed to prove beyond a reasonable doubt that the defendant was "responsible for the general supervision" of the complainant, an essential element of the crime of sexual assault in the second degree as charged.[3]

---

[1] General Statutes § 53a-71 (a) (3) provides: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is . . . (3) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare. . . ."

[2] General Statutes (Rev. to 1977) § 53a-191 (a) provided: "(a) A person is guilty of incest when he marries or engages in sexual intercourse with a person whom he knows to be related to him within any of the degrees of kindred specified in section 46-1."

[3] The defendant also contends that the trial court erred in denying the defendant's motion for a mistrial which was predicated

The jury could have reasonably found the following: On May 27, 1978, at approximately 11:30 p.m., the complainant, a sixteen year old girl, left Hartford with the defendant, Willie Burney, for a trip to New York City. The defendant drove the car as far as New Haven and obtained a room at a motel at approximately 1 a.m. on May 28, 1982. Once in the room, the defendant told the complainant to sleep without clothes. The defendant got into the same bed with her even though there was another bed in the room. The defendant and the complainant stayed at the hotel for the duration of the night. In the morning, the defendant had sexual intercourse with the complainant.

The two continued their trip to New York City that morning, but finding the stores closed there, they returned to the defendant's home in Hartford, arriving at approximately 3:30 p.m. The complainant received a message there that her mother had telephoned for her to return home. She walked home, awakened her mother, and informed her of the incident in New Haven. The complainant's mother took her daughter to the Hartford police department at approximately 9:10 p.m. to file a complaint against the defendant, and then to Hartford Hospital for an examination. On June 1, 1978, the complainant's mother and the complainant reported the incident to the New Haven police department upon advice of the Hartford police.

The complainant had been staying at the home of the defendant and his family for approximately one and one-half months before the incident. The mother testified at trial that the defendant was the

upon an allegedly improper comment by the trial judge. In view of our resolution of the defendant's other claim, we do not address this claim of error.

complainant's father, but that her birth certificate indicated Samuel Meyers as the father. Samuel Meyers was married to the complainant's mother at the time of her birth. Sometime after the complainant's birth, the complainant's mother separated from Samuel Meyers and lived with the defendant, Willie Burney. Although they no longer lived together, the complainant's mother continued to see the defendant up to the date of the complaint. The complainant's mother testified that the defendant treated the complainant as his daughter, buying her presents and providing for her needs.

The defendant's claim is that the state failed to meet its burden of proof in this case because it failed to prove that, at the time of the incident, the defendant was "responsible for the general supervision" of the complainant's welfare, an essential element of the crime of sexual assault in the second degree under General Statutes § 53a-71 (a) (3). We agree, and hold that the trial court erred in denying the defendant's motion for judgment of acquittal.

"Our decision on this issue is premised on a fundamental principle of our law. The burden in a criminal case is placed squarely upon the prosecution to prove each essential element of the alleged crime beyond a reasonable doubt. There is no burden on the defendant to prove his innocence. *State* v. *Beauton,* 170 Conn. 234, 240, 365 A.2d 1105 (1976); *State* v. *Brown,* 163 Conn. 52, 64, 301 A.2d 547 (1972); *State* v. *Benson,* 153 Conn. 209, 215, 214 A.2d 903 (1965). See *Mullaney* v. *Wilbur,* 421 U.S. 684, [701–704], 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); *Davis* v. *United States,* 160 U.S. 469, 487, 16 S. Ct. 353, 40 L. Ed. 499 (1895)." *State* v. *Anonymous,* 179 Conn. 516,

519, 427 A.2d 403 (1980); see *State* v. *Kurvin,* 186 Conn. 555, 573, 442 A.2d 1327 (1982) (*Speziale, C. J.,* dissenting). If the state fails to prove any element beyond a reasonable doubt, it has failed in its burden of proof. *State* v. *McDonough,* 129 Conn. 483, 484, 29 A.2d 582 (1942); *State* v. *Newman,* 127 Conn. 398, 400, 17 A.2d 774 (1940).

The resolution of the issue before us turns upon our interpretation of General Statutes § 53a-71 (a) (3). General Statutes § 53a-71 provides, in relevant part: "(a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is (1) under fifteen years of age, or (2) mentally defective, mentally incapacitated or physically helpless, or (3) less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare, or (4) such other person is in custody of law or detained in a hospital or other institution and the actor has supervisory or disciplinary authority over such other person." The defendant was charged specifically with violation of subsection (a) (3) which speaks in terms of a person who is responsible for the general supervision of the welfare of a person between the ages of fifteen and seventeen. The statute does not prescribe how such responsibility attaches or what the words "responsible for" and "general supervision" encompass. Nor is an explanation to be found in the legislative history of the statute.

"When confronted with ambiguity in the intent and purpose of a legislative enactment, it becomes necessary to apply the rules of statutory construction to ascertain the actual intention expressed by

the language used." *Farms Country Club, Inc.* v. *Carini,* 172 Conn. 439, 443, 374 A.2d 1094 (1977). An important rule of statutory construction is that the words of a statute are to be interpreted by their commonly accepted meaning unless their context indicates a different meaning was intended. *Holmquist* v. *Manson,* 168 Conn. 389, 393, 362 A.2d 971 (1975); *Whitfield* v. *Empire Mutual Ins. Co.,* 167 Conn. 499, 505, 356 A.2d 139 (1975). "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language." General Statutes § 1-1 (a). The word "responsibility" denotes accountability, and the word "supervision" denotes broad authority to oversee with the powers of direction and decision. See American Heritage Dictionary of the English Language (1969); Webster's Third New International Dictionary (1968). While it is clear that a judicial decree is not necessary in order to become responsible for the general supervision of a minor under § 53a-71 (a) (3), neither is the mere assumption by a third person of the temporary care of a minor enough to bring that third party within the class of persons to whom the statute applies.

Another rule of statutory construction is that a statute should be construed as a whole where particular words or sections of the statute, considered separately, are lacking in precision of meaning. *Mitchell* v. *King,* 169 Conn. 140, 144, 363 A.2d 68 (1975). "The construction of a statute depends upon its expressed intent when it is taken as a whole." *Dombrowski* v. *Fafnir Bearing Co.,* 148 Conn. 87, 90, 167 A.2d 458 (1961). The subsections immediately preceding and following § 53a-71 (a) (3) show that the legislature was seek-

ing to protect people who were helpless and vulnerable to sexual assault as a result of their age, their mental or physical incapacities, or as a consequence of their restricted physical freedom while in custody of law or detained in a hospital or other institution. Construing the words "responsible for the general supervision of such person's welfare" in subsection (a) (3) to require something more than the performance of acts of a paternal nature by a third person out of concern for the comfort, health or welfare of the child, would be consistent with the legislative intent to protect the helpless suggested by subsection (a) (2) and (a) (4). In addition, the proximity of the words "or otherwise responsible for" to the word "guardian" indicates that the legislature intended the categories to be roughly equivalent, with the obligations and degree of control of the actor over the child which are implied by the phrase "or otherwise responsible for the general supervision of such person's welfare" to be similar to those of legal guardianship. This interpretation is supported by the principle that when two or more words which are grouped together have similar meanings but are not equally comprehensive, the general word is qualified by the special word. *Levin-Townsend Computer Corporation* v. *Hartford,* 166 Conn. 405, 410, 349 A.2d 853 (1974).

Another relevant principle of statutory construction is that " '[n]o word in a statute should be treated as superfluous, void or insignificant unless there are impelling reasons . . . why this principle cannot be followed.' *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 126, 55 A.2d 732 (1947)." *Levin-Townsend Computer Corporation* v. *Hartford,* supra, 409; *State* v. *Grant,* 176 Conn. 17, 20,

404 A.2d 873 (1978); *Kulis* v. *Moll,* 172 Conn. 104, 111, 374 A.2d 133 (1976). Had the legislature intended that any small degree of supervision demonstrated by a person would meet the criteria of § 53a-71 (a) (3), it is likely that the drafter would have left out the modifier "general" before the word "supervision." It is only reasonable to interpret "general supervision" to mean a greater degree of control and authority to direct than is implied by the word "supervision" standing alone without a modifier.

Applying our interpretation of the statute to the facts of this case, we conclude that the defendant was not responsible for the general supervision of the complainant's welfare within the meaning of General Statutes § 53a-71 (a) (3) at the time of the incident for which he was charged and convicted. There is no evidence that responsibility for the complainant's welfare had been vested in the defendant by court order or award, nor is there any evidence that the complainant's mother had intended to relinquish responsibility for the supervision of her welfare to the defendant. Instead, the complainant's mother testified that she had placed a call to the defendant's home leaving instructions for her daughter to come home. The complainant testified that she was living with the defendant and his family because she had been in trouble at school.

"When a verdict is challenged because of insufficient evidence, the issue is whether the jury could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt. *State* v. *Ruiz,* 171 Conn. 264, 276–77, 368 A.2d 222 (1976);

*State* v. *Benton,* 161 Conn. 404, 407, 288 A.2d 411 (1971). It is the province of the jury to draw reasonable and logical inferences from the facts proved. *State* v. *Williams,* 169 Conn. 322, 336, 363 A.2d 72 (1975)." *State* v. *Nemeth,* 182 Conn. 403, 410, 438 A.2d 120 (1980). A limitation upon the jury, however, is that the inferences should be drawn only from and bear a logical relation to other facts which have been proven; inferences cannot legally rest on facts which are merely surmised. *State* v. *Englehart,* 158 Conn. 117, 121, 256 A.2d 231 (1969); *State* v. *Foord,* 142 Conn. 285, 294, 113 A.2d 591 (1955); *Fitch* v. *State,* 138 Conn. 534, 541, 86 A.2d 718 (1952).

Reviewing the evidence as favorably as possible with a view toward sustaining the jury's verdict, as we are required to do; *State* v. *Brown,* 169 Conn. 692, 695, 364 A.2d 186 (1975); see *State* v. *Maturo,* 188 Conn. 591, 601, 452 A.2d 642 (1982); we must conclude that the facts established at trial and the inferences which could have been reasonably drawn therefrom are not sufficient to support the jury's conclusion that the defendant fell within the class of persons to whom the statute applied. We hold, therefore, that the state failed to prove an essential element of the crime charged and that, consequently, the evidence was insufficient as a matter of law to support the jury's determination of guilt beyond a reasonable doubt.

There is error, the judgment is set aside and the case is remanded to the trial court with direction to grant the defendant's motion for acquittal after verdict.

In this opinion PETERS, PARSKEY and GRILLO, Js., concurred.

SHEA, J. (dissenting). I disagree. General Statutes § 53a-71 (a) (3) is derived from § 213.3 (b) of the Model Penal Code of the American Law Institute which makes it a crime to engage in sexual intercourse "if . . . (b) the other person is less than 21 years old and the actor is his guardian or otherwise is responsible for general supervision of his welfare." American Law Institute Model Penal Code § 213.3 (b); see Connecticut General Statutes Annotated § 53a-70 (a) (1) (West 1972) (1971 Commentary by the Commission to Revise the Criminal Statutes).[1] Section 53a-71 (a) (3), though limiting its protection to persons less than eighteen years old, uses virtually the same language in describing the prohibited relationship: "the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare." The official comment[2] of the institute upon this section indicates that it "reaches one kind of illegitimate use of authority to gain sexual gratification." The relationship of a stepfather to a stepdaughter is

---

[1] Section 53a-70 (a) (1) was the predecessor to § 53a-71 (a) (3) and the language of the provision was retained by the 1975 amendment of the entire section. See Public Acts 1975, No. 75-619, § 4.

[2] American Law Institute Model Penal Code and Commentaries, Part II, § 213.3, comment 3 is as follows:

"3. *Intercourse with a Ward.* Paragraph (b) of Subsection (1) reaches one kind of illegitimate use of authority to gain sexual gratification. Specifically, it covers intercourse with a person less than 21 years old by his guardian or someone else responsible for general supervision of his welfare. Of course, intercourse with a natural or adopted child constitutes incest under Section 230.2 of the Model Code. Relations with a stepchild are excluded from the incest provision because it was thought inappropriate to enforce a permanent bar on marriage between steprelations. Where, for example, surviving parents remarry late in life, marriage between stepbrother and stepsister may do no real violence to the institution of the family. Similarly, the young man who marries a young stepmother after the death of his aged father may be guilty of nothing more than bad taste. Yet intercourse between father and stepdaughter is a frequent instance of sexual imposition within the

cited as "a frequent instance of sexual imposition within the family unit" to which the section was intended to apply. "Probation officers, camp supervisors and the like" are mentioned as "others who have responsibility for general supervision of a child's welfare."

It is apparent that the majority have given a much narrower reading to § 53a-71 (a) (3) than its origin would warrant by insisting upon evidence "that the complainant's mother had intended to relinquish responsibility for the supervision of her welfare to the defendant." Such a requirement would wholly frustrate the application of the statute to stepfathers, its principal raison d'etre, as well as to other persons acting in capacities where they have been entrusted with a responsibility for the supervision of children which is neither exclusive nor permanent. The draftsmen of the statute have indicated that it "is aimed at situations in which there is consent but the actor is in a supervisory or custodial position vis-a-vis the victim." Connecticut General Statutes Annotated § 53a-70 (West 1972) (1971 Commentary by the Commission to Revise the Criminal Statutes).

family unit. Perhaps the principal function of Section 213.3(1)(b) is to repress such relations where the child is less than 21 years old and where the stepfather has been appointed guardian or stands in *loco parentis*. This provision punishes such conduct for what it is—not incest, but aggravated illicit intercourse achieved by misuse of a position of authority and control. Of course, Paragraph (b) also applies to others who have responsibility for general supervision of a child's welfare. Such persons would include probation officers, camp supervisors, and the like. The tentative draft of this offense reached anyone responsible for "care, treatment, protection, or education," a formulation that was deemed too broad in its impact. Doctor-patient and teacher-student relationships, for example, would have been included within the previous formulation, and while one can imagine situations where such cases should be included, it seemed inappropriate to provide for general coverage." (Footnotes omitted.)

Since the purpose of the legislation is to punish one who abuses his authority to the detriment of a child subject to that authority, our major focus should be, not upon the mechanics of the transfer of supervision of the child from the mother of the victim to the defendant, but upon the relationship between the child and the defendant. The evidence clearly established that the victim regarded the defendant as her father, whether or not her belief was correct. His frequent visits and the attention he had shown her over the years confirmed this impression on her part. With her mother's knowledge and approval she had been living at his home for about one and one-half months before the incident where, in every practical sense, she had been subject to his care and general supervision. She did not receive the message from her mother to return home which is mentioned by the majority until after the offense charged had occurred. That the victim regarded the defendant as standing in loco parentis and felt obligated to obey him, and that he was fully aware of the authority entrusted to him over her are findings which the jury could reasonably have made from the testimony presented. Such a view of the evidence would justify their verdict of guilty in accordance with the provisions of § 53a-71 (a) (3).

I also find no error in the comment of the trial court which the defendant relies upon in claiming error in the refusal to grant his motion for a mistrial. The majority have found it unnecessary to address this claim because its disposition would not affect the outcome they have reached. When the defendant failed to produce two witnesses whom he had said on the previous day he would present, the court, in explaining why it was unprepared to

deliver the charge, remarked that "the fact that the evidence is concluded as early as it did, came as somewhat of a surprise to the court." The claim of the defendant that this statement was a comment upon his failure to testify in violation of the principles of *Griffin* v. *California,* 380 U.S. 609, 614, 85 S. Ct. 1229, 14 L. Ed. 2d 106, reh. denied, 381 U.S. 957, 85 S. Ct. 1797, 14 L. Ed. 2d 730 (1965), or was otherwise prejudicial is too frivolous for serious discussion.

I find no error.