[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The issue in this case is whether the City of New Haven has "privatized" its municipal golf course. The court concludes that it has.
The plaintiff, John Orlowski, and the defendant, City of New Haven (city), entered into a written agreement for the period March 1, 1994 to December 31, 1997 in which the city contracted with the plaintiff to serve as the golf professional at the city's municipal golf course. Part I § 104 of the agreement provided: "In the event that the golf course is privitized (sic) during the term of this Agreement, this Agreement shall terminate." Part II § 2 provided, inter alia: "The City may terminate this Contract any time by a notice in writing from the City to the Contractor."
In April, 1997, the city issued a "request for qualifications" from private managers and the following month issued a request for proposals for the "management, operation, and maintenance" of the golf course. The plaintiff himself was encouraged by the mayor to submit a proposal and did so. However, on June 12, 1997, the plaintiff was notified that his contract with the city was terminated effective June 18, 1998 because the golf course was being privatized. On June 15, 1997, the city formally entered into a management agreement with New England Golf Corporation. The following month the Corporation Counsel for the City of New Haven wrote to the plaintiff's attorney, stating: "I recognized an omission from my July 30 letter. As we discussed, the City of New Haven has two positions regarding Mr. Orlowski's agreement: that privatization of the Golf Course resulted in the cancellation of Mr. Orlowski's agreement, and as discussed, that the City of New Haven canceled Mr. Orlowski's agreement for the convenience of the City, as permitted by the agreement." The plaintiff subsequently brought this action claiming a breach of contract and bad faith. The case was tried to the court.
"When a contract term is ambiguous, [t]he oft-repeated rule is that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words in the light of the circumstances surrounding the execution of the writing and in the light of the object of the parties in executing the contract. . . . The words used by the parties must be accorded their common meaning and usage where they can be sensibly applied to the subject matter of the contract. . . ." (Internal quotation marks and citations omitted.) Marcus v. Marcus, 175 Conn. 138, CT Page 10943 141-142, 394 A.2d 727 (1978). To "privatize" means "to make private; esp to change (as a business or industry) from public to private control or ownership. . . ." "The term `privatization' is a broad term that has been used to describe a wide range of activity. See generally Ronald A. Cass, Privatization: Politics, Law, and Theory, 71 Marq. L. Rev. 449, 451 (1988). `Privatization refers to the shift from government provision of functions and services to provision by the private sector.' George L. Prist, Introduction: The Aims of Privatization, 6 Yale L. Pol'y Rev. 1, 1 (1988). In countries other than the United States, privatization usually refers to the selling of government owned and operated businesses to private enterprise.Cass, supra, at 450. However, another type of privatization, which is at issue in the present dispute, is known as `contracting out.' The activity can be defined as `the transfer by governmental entities of responsibility for the performance of desired functions, mostly of a personal service (i.e.
administrative) nature, to private institutions' or `the replacement of members of [a] bargaining unit by the employees of an independent contractor performing the same work under similar conditions of employment.' Timothy P. Dowling, Note, CivilService Restrictions on Contracting Out by State Agencies, 55 Wn. L. Rev. 419, 419 n. 3 (1980)." Konno v. County of Hawaii,937 P.2d 397, 404 (Haw. 1997).
The definition of the word "privatized," therefore, "is relatively easy to state. The difficulty lies in applying it to a particular case." Petrowski v. Norwich Free Academy,2 Conn. App. 551, 562, 481 A.2d 1096 (1984), rev'd on other grounds,199 Conn. 231, 237, 506 A.2d 139, appeal dismissed, 479 U.S. 802,107 S.Ct. 42, 93 L.Ed.2d 5 (1986).
The plaintiff claims[1] that under its contract with New England Golf, the city retains so much control that it cannot be said that New England Golf has control and that the golf course has been privatized. The law recognizes that control is not an absolute but that, for a variety of legal concepts, a certain degree of control must exist. See, e.g., State v. Burney,189 Conn. 321, 327, 455 A.2d 1335 (1983) ("general supervision" over a child implies a greater degree of control than "supervision");Rogers v. Atlantic Pacific Tea Co., 148 Conn. 104, 107,167 A.2d 712 (1961) (degree of control necessary for premises liability); Murphy v. Buonato, 42 Conn. App. 239, 244,679 A.2d 411 (1996), aff'd, 241 Conn. 319, 696 A.2d 320 (1997) (In order CT Page 10944 to harbor or possess a dog for purposes of liability under the dog-bite statute, some degree of control must be exercised);Falcone v. Watchman, Inc., 11 Conn. App. 218, 221, 526 A.2d 550
(1987) (A key factor in making a determination of whether the corporate shield should be disregarded is the degree of control or influence exercised over the corporation by the individual sought to be held liable); Cook v. Nye, 9 Conn. App. 221, 226,518 A.2d 77 (1986) (Applicability of the family car doctrine depends on person from whom car was taken having or exercising some degree of control over its use); State v. Leavitt,8 Conn. App. 517, 522, 513 A.2d 744, cert. denied, 201 Conn. 810,516 A.2d 887 (1986) (a parent has a right to exercise that degree of control or restraint as would reasonably enable him to discharge his parental duties); Zarrelli v. Barnum Festival Society,Inc., 6 Conn. App. 322, 329, 505 A.2d 25, cert. dednied,200 Conn. 801, 509 A.2d 516 (1986) (Festival sponsor did not have that degree of control and management over the construction of the float that killed decedent that would impose liability on it under any theory); Val-Pal of Central Connecticut v.Commissioner, 44 Conn. Sup. 133, 670 A.2d 343 (1994), aff'd,225 Conn. 99, 622 A.2d 518 (1996) (degree of control principal must exercise over an undertaking for there to be an agency relationship); Daw's Critical Care Registry v. Dept. of Labor,42 Conn. Sup. 376, 386, 622 A.2d 622 (1992), aff'd, 225 Conn. 99,622 A.2d 518 (1993) (private nursing agency retained sufficient control over its nurses that they were employees, not independent contractors).
To be sure, in the New Haven-New England Golf Corporation management agreement, the parties dictate the purpose for which the premises shall be used, that New England Golf will deposit all money received with the City, that it will manage the premises in accordance with a budget prescribed by the city, that it shall make certain prescribed capital improvements, that it shall not operate and manage the premises for an improper purpose nor engage in unlawful employment practices, and shall maintain the premises in a very detailed way according to prescribed minimum standards. Notably, the plaintiff has made no showing that this contract was a mere subterfuge to terminate his contract. The court finds that the city has, under the terms of the contract, transferred a sufficient degree of control to New England Golf demonstrating that it has privatized the golf course within the intendment of its agreement with the plaintiff. Moreover, the city properly terminated its agreement with the plaintiff in accordance with Part II § 2 of the plaintiff's CT Page 10945 contract and did not do so in bad faith since, its contract with New England Golf provided that it would undertake the responsibility of furnishing golf lessons by a golf professional. "It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." Zullo v. Smith, 179 Conn. 596, 601, 427 A.2d 409
(1980).
Judgment may enter for the defendant on all counts.
Bruce L. LevinJudge of the Superior Court