## STATE OF CONNECTICUT *v.* RICHARD S.*
## (AC 33173)

Beach, Bear and Schaller, Js.

* In accordance with our policy of protecting the privacy interests of the victims of sexual assault, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued November 15, 2012—officially released June 25, 2013

*Sheila A. Huddleston,* assigned counsel, with whom, on the brief, were *Laurie A. Sullivan* and *Moira L. Buckley,* for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *David S. Shepack,* state's attorney, and *Terri L. Sonnemann,* assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, Richard S., appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (4) and one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (2). On appeal, the defendant claims that the trial court improperly (1) denied his motion for a judgment of acquittal on the ground that there was insufficient evidence to reach a guilty verdict, (2) precluded the admission of evidence relevant to his defense, and (3) denied his motion to suppress his oral and written statements to the police. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The sixteen year old victim, A, was residing in Florida apart from her mother due to a discordant relationship with her mother. While A was living independently, she received a message from the defendant, her father, with whom she had not had contact since she was approximately five years old. After hearing about her current living situation and relationship with her mother, the defendant invited A to come to Connecticut

and live with him. The defendant paid for A's transportation from Florida to his home in Connecticut because A could not afford to travel to Connecticut without the defendant's financial assistance. A packed one or two boxes for her stay with the defendant. Although A intended to remain with the defendant for as long as she could to "make up for as much lost time as possible," she did not know exactly how long that would be. A's mother was unaware that A had left for Connecticut and had retained A's social security card, but the defendant contacted A's mother to inform her of A's arrival. A was welcomed into the defendant's home by the defendant and his family. The defendant supported A during her stay, providing her with food, shelter and transportation. A and her mother spoke periodically by telephone while she was in Connecticut.

Approximately one month after A began living with the defendant, two incidents occurred in which the defendant inappropriately kissed A on her neck. Shortly thereafter, A disclosed these incidents to her friends. A testified that she returned to her father's home because she had nowhere else to go and believed that her only option was to wait until she could contact her mother. On or about May 20, 2007, A and the defendant began drinking alcohol together. After having several drinks, A became intoxicated and went to the bathroom because she felt ill. The defendant followed A and sexually assaulted her in the bathroom.

The next day, on May 21, 2007, A left the defendant's house and went to a nearby store to contact her mother; A was unable to complete the telephone call to her mother because she could not recall the defendant's PIN number used to make long-distance calls. An individual on the street offered a cell phone to A, and she contacted her mother to disclose the sexual assault. A then contacted the police to report the assault and was taken to a hospital where she was examined by a sexual

assault nurse examiner who collected physical evidence. Analysis of the evidence revealed that the defendant was the source of the spermatozoa found in A's vaginal smear samples, and further DNA testing confirmed that the defendant was A's biological father. A's mother arrived in Connecticut on May 21, 2007, and took A back to Florida shortly' thereafter.

The defendant was arrested and charged with one count of sexual assault in the second degree in violation of § 53a-71 (a) (4) and one count of sexual assault in the third degree in violation of § 53a-72a (a) (2). At the close of trial the defendant moved for a judgment of acquittal on the ground that the evidence was insufficient to establish that he was responsible for A's general supervision and welfare as required by § 53a-71 (a) (4). The court denied the defendant's motion, finding that the state had made a prima facie case and had produced sufficient evidence to submit the question of the defendant's guilt to the jury. The jury found the defendant guilty of both counts. The court sentenced the defendant to a total effective term of fifteen years imprisonment, suspended after eight years, and twenty years probation. This appeal followed. Additional facts are set forth as necessary.

I

The defendant first asserts that the court erred in denying his motion for a judgment of acquittal because the evidence was insufficient to support his conviction pursuant to § 53a-71 (a) (4). Specifically, the defendant argues that the evidence demonstrates that he and A had been estranged for a significant portion of her life, and that A was living independently and only visiting the defendant temporarily. According to the defendant, this evidence is not sufficient to prove that he was

responsible for A's general supervision and welfare.[1] We conclude that viewing the evidence and reasonable inferences drawn therefrom in the light most favorable to sustaining the verdict, the jury reasonably could have found that the defendant was responsible for A's general supervision and welfare.

We set forth the standard of review and legal principles that guide our analysis. "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [trier's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt

---

[1] In count one of its long form information, the state charged the defendant with sexual assault in the second degree in violation of § 53a-71 (a) (4), alleging specifically that the defendant had engaged in sexual intercourse with A while she was under the age of eighteen and that "[the defendant] was responsible for the general supervision of [A's] welfare . . . ." Because the state did not allege that the defendant violated § 53a-71 (a) (4) in his capacity as A's guardian, we limit our analysis to the defendant's claim that the evidence was insufficient to support a finding that he was generally responsible for A's supervision.

. . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [trier's] verdict of guilty. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Alberto M.*, 120 Conn. App. 104, 108–109, 991 A.2d 578 (2010).

Next, we turn to the essential elements of the offense at issue to determine whether there is a reasonable view of the evidence that supports the guilty verdict. Section 53a-71 (a) provides in relevant part that "[a] person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and . . . (4) such other person is less than eighteen years old and the actor is such person's guardian or otherwise responsible for the general supervision of such person's welfare." Our Supreme Court has previously construed subsection (a) (4) on two separate occasions, first in *State* v. *Burney*, 189 Conn. 321, 455 A.2d 1335 (1983),[2] and again in *State* v. *Snook*, 210 Conn. 244, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989).

---

[2] We observe that at the time our Supreme Court decided *Burney*, § 53a-71 (a) (4) was then designated as subsection (a) (3). See *State* v. *Snook*, 210 Conn. 244, 266, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989). For consistency we refer to that provision as subsection (a) (4) throughout this opinion.

In *Burney*, our Supreme Court determined that the statutory terms "responsible" and "general supervision" were ambiguous. *State* v. *Burney*, supra, 189 Conn. 325. In further construing these terms, the court concluded that "[w]hile it is clear that a judicial decree is not necessary in order to become responsible for the general supervision of a minor under [§ 53a-71 (a) (4)], neither is the mere assumption by a third person of the temporary care of a minor enough to bring that third party within the class of persons to whom the statute applies. . . . [T]o require something more than the performance of acts of a paternal nature by a third person out of the concern for the comfort, health or welfare of the child, would be consistent with the legislative intent to protect the helpless [as suggested by the statute's other subsections]. . . . [T]he legislature intended the categories ['otherwise responsible for' and 'guardian'] to be roughly equivalent, with the obligations and degree of control of the actor over the child . . . to be similar to those of legal guardianship." (Citations omitted.) Id., 326–27.

In *Burney*, the victim had been staying at the defendant's home for approximately one and one-half months before the sexual assault. The victim's mother claimed that the defendant was the victim's biological father, but his name was not listed on the victim's birth certificate. The victim's mother further testified that the defendant treated the victim as his daughter, buying her presents and providing for her needs. Id., 323–24. In concluding that the evidence was insufficient to establish that the defendant was responsible for the victim's general supervision or welfare, the court observed that there was no evidence that the victim's mother intended to relinquish responsibility to the defendant and, to the contrary, the victim's mother called the defendant, leaving instructions for her daughter to return home. Id., 328.

In *Snook*, our Supreme Court again examined subsection (a) (4), holding that biological parents are not excluded from criminal liability under this subsection, but, like any other actor, they must be guardians or responsible for the victim's general supervision or welfare. *State* v. *Snook*, supra, 210 Conn. 267. Finally, in *State* v. *Martin*, 38 Conn. App. 731, 744, 663 A.2d 1078 (1995), cert. denied, 237 Conn. 921, 676 A.2d 1376, cert. denied, 519 U.S. 1044, 117 S. Ct. 617, 136 L. Ed. 2d 541 (1996), a case in which the defendant was the victim's biological father, this court considered the testimony as well as the defendant's and victim's relationship when concluding that there was sufficient evidence to find the defendant guilty of sexual assault under subsection (a) (4).

We are not persuaded by the defendant's arguments that A was independent and temporarily visiting the defendant. At the outset, we note that neither the subjective intent of A nor of the defendant is dispositive in this case. First, the defendant was, in fact, A's biological father, and contacted her after a lengthy period of estrangement in order to establish a relationship. Additionally, the defendant provided A with the necessary financial assistance in order for her to travel to Connecticut, opened his home to her, and provided her with food, lodging and transportation. Although A did not bring all of her belongings, she testified that she intended to stay with the defendant as long as possible to make up for lost time and further testified that she was welcomed into the defendant's home by his family. Indeed, A had already been residing with the defendant for approximately one month at the time of the sexual assault.

Although A spoke with her mother regularly, and A's mother retained her social security card, we are not persuaded by the defendant's argument that these facts

indicate that the defendant had not assumed responsibility for A's care and supervision. Under the circumstances in this case, the jury reasonably could have inferred that, because A was geographically isolated from her mother and that her circumstances had changed significantly upon her arrival at the defendant's home, she had become dependent upon the defendant to meet her needs. In fact, although A had disclosed the incidents of inappropriate kissing to her friends, she testified that she believed that she had no choice but to return to the defendant's home until she could contact her mother. On the basis of the defendant's conduct in inviting A to his home, paying for A's travel expenses from Florida to Connecticut, and providing A with food, shelter and transportation, all while cultivating the parent-child relationship, the jury reasonably could have inferred that the defendant assumed a role sufficient to satisfy the requirements of subsection (a) (4). For the foregoing reasons we conclude that the court did not err in denying the defendant's motion for a judgment of acquittal.

## II

The defendant next claims that the court improperly precluded evidence that was relevant to his defense that he was not responsible for A's general welfare. We are not persuaded.

"The standard of review we apply to a trial court's evidentiary rulings is well settled. Such rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Abreu*, 106 Conn. App. 278, 282, 941 A.2d 974, cert. denied, 286 Conn. 919, 946 A.2d 1249 (2008).

We will address each of the defendant's arguments in turn, beginning first with his argument that the court improperly redacted portions of one of his two written statements to the police that were relevant to his defense. Prior to trial, the state moved to redact a portion of the defendant's May 21, 2007 statement on the grounds that it was irrelevant, contained inadmissible hearsay and contained inadmissible information regarding A's prior misconduct.[3] The court granted the state's motion to redact the defendant's statement without specifying the grounds upon which its ruling was based.

The defendant argues on appeal that, although the statement contained information regarding A's prior misconduct, it was nonetheless admissible pursuant to Connecticut Code of Evidence § 4-5 (c) to challenge the state's proof of an element of the crime.[4] Specifically, the defendant contends that the redacted statements would have provided the jury with a basis for finding that A came to Connecticut to avoid legal problems and not because she intended the defendant to become her guardian, thereby establishing that the defendant was not A's guardian or responsible for her

[3] The contested portion of the defendant's May 21, 2007 statement provides: "[A] thought that her boyfriend was going to be able to come up to Connecticut too, I had told her that I would try to get him up here, but then I found out more about him. [A's] mother told me he messes with little girls and that he deals drugs. [A's mother] told me that [A] and her boyfriend were chased by the police. When they got pulled over, he was arrested on a warrant. And when [A] was chased, they found cocaine in her bra. I don't know if [A] was arrested for that. [A] told me they were stopped for no reason and that the drugs were not hers, but she hid them. [A's mother] told me that she believes [A] was sexually assaulted by one boyfriend but not the second time."

[4] Section 4-5 (a) of the Connecticut Code of Evidence provides in relevant part that "[e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character or criminal tendencies of that person."

Section 4-5 (b) of the Connecticut Code of Evidence provides in relevant part that "[e]vidence of other crimes, wrongs or acts of a person is admissible for purposes other than those specified in subsection (a), such as to prove . . . an element of the crime . . . ."

general supervision as required by § 53a-71 (a) (4). We are not persuaded.

The court had before it several bases upon which it could have excluded the disputed portion of the defendant's statement. When the court does not articulate a factual or legal basis for its ruling, as in the present case, it is appropriate to seek a motion for articulation. *Orcutt* v. *Commissioner of Correction*, 284 Conn. 724, 738, 937 A.2d 656 (2007) ("[i]t is . . . the responsibility of the appellant to move for an articulation . . . of the record [when] the trial court has failed to state the basis of a decision" [internal quotation marks omitted]); see also Practice Book § 61-10. In the absence of an articulation, we read the record in a manner to support the judgment of the trial court. "[W]e do not presume error; the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." (Internal quotation marks omitted.) *State* v. *Baker*, 50 Conn. App. 268, 275 n.5, 718 A.2d 450, cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998); see also *State* v. *Reynolds*, 264 Conn. 1, 29 n.21, 836 A.2d 224 (2003) ("[i]n the absence of any evidence to the contrary, [j]udges are presumed to know the law . . . and to apply it correctly" [internal quotation marks omitted]), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). The defendant has failed to meet this burden.

While factually distinguishable from the present case, the general principles set forth in *State* v. *Crumpton*, 202 Conn. 224, 520 A.2d 226 (1987), are instructive. In *Crumpton*, the defendant argued that the trial court applied the incorrect law when denying his motion to preclude the state from mentioning his prior conviction of robbery in the second degree, yet the record did not conclusively reveal the basis of the trial court's decision. Id., 226–31. Our Supreme Court affirmed the

trial court's ruling and presumed that the court reflected upon the proper factors before issuing its ruling. Id., 231. Our Supreme Court noted that the record revealed that the appropriate considerations were before the trial court and that the state did not proffer another basis for the introduction of the evidence. Id.

Although the state argued several grounds in support of precluding the admission of the disputed statements and the record in this case does not reveal the basis of the court's decision, we note that the court had before it the proper considerations to determine that the evidence was not admissible to challenge the state's proof of an element of the crime pursuant to § 4-5 (c) of the Code of Evidence. In fact, in opposition to the state's motion to redact, the defendant specifically argued to the court that the statements at issue were relevant to prove that A possessed self-seeking motives—namely, escaping potential criminal liability—when she moved to Connecticut to live with the defendant, and therefore did not place herself under his general supervision. See id., 231–32. Absent an articulation regarding the legal basis for the trial court's decision, we will not speculate that the trial court failed to consider § 4-5 in reaching its conclusion. See *State* v. *Elson*, 125 Conn. App. 328, 365–66, 9 A.3d 731 (2010) ("speculation and conjecture . . . have no place in appellate review" [internal quotation marks omitted]), cert. granted on other grounds, 300 Conn. 904, 12 A.3d 572 (2011). Accordingly, we presume that the court did not err in granting the state's motion to redact portions of the defendant's statement. See *State* v. *Crumpton*, supra, 202 Conn. 232 ("a claim of error cannot be predicated on an assumption that the trial court acted erroneously" [internal quotation marks omitted]). For the foregoing reasons, we cannot conclude that the trial court abused its discretion in precluding the admission of the disputed portions of the defendant's May 21, 2007 statement.

The defendant next argues that the court erroneously precluded evidence regarding how A supported herself financially while living apart from her mother in Florida[5] and erroneously precluded the defendant from asking A's mother whether A was trying to return to Florida prior to her allegations of sexual assault. The state objected to both questions on the ground of relevance, and the court sustained the state's respective objections.

On appeal, the defendant asserts that this testimony was relevant to prove that A's stay with him was temporary and that she was not subject to his supervision. We are not persuaded. "Section 4-1 of the Connecticut Code of Evidence provides in pertinent part that evidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." (Internal quotation marks omitted.) *State* v. *Johnson*, 107 Conn. App. 188, 193, 944 A.2d 416, cert. denied, 288 Conn. 905, 953 A.2d 650 (2008). We agree with the court that how A supported herself financially and whether A was trying to return to Florida when she alleged that the defendant sexually assaulted her does not make it more or less likely that the defendant was responsible for her general supervision at the time he assaulted her in Connecticut. Accordingly, we cannot conclude that the court abused its discretion by precluding inquiry into these matters.[6]

[5] At the defendant's trial, A had testified that she was not employed while she was living independently from her mother.

[6] The defendant argues that the court's evidentiary rulings violated his constitutional rights to confrontation and to present a defense. Because we conclude that the court's evidentiary rulings were proper, we further conclude that the defendant's constitutional claims are without merit. *State* v. *Abreu*, supra, 106 Conn. App. 282 ("As we [have] observed, [a] defendant's right to present a defense does not include a right to present evidence that properly is excluded under the rules of evidence. . . . The defendant's sixth amendment right . . . does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, [a defendant] must comply with established rules of procedure and evidence in exercising his right to present a defense." [Internal quotation marks omitted.]).

## III

The defendant finally claims that the court erred in denying his motion to suppress the statements he made to the police on May 21, 2007, and May 22, 2007. The defendant's claim that the court improperly denied his motion to suppress is twofold. The defendant first contends that the court improperly concluded that he was not in custody at the time he gave the respective statements. He also argues that the court improperly determined that his statements were given voluntarily. We are not persuaded.

The following additional facts are necessary to our resolution of the defendant's claims. At the hearing on the defendant's motion to suppress, Richard Good, a Torrington police detective, testified that he was assigned to investigate A's assault on May 21, 2007, and interviewed the defendant that same morning. Good and another officer went to the defendant's home, dressed in plain clothes in an unmarked car, and explained to the defendant that they were investigating a complaint made by A. Good then asked the defendant to come to the police station to speak with him privately because the complaint was of a sensitive nature. Good explained that because the defendant did not drive, he gave the defendant a ride to the police station. The defendant rode in the backseat of the unmarked police car, which had no partition between the back and front seats.

Good testified that upon arriving at the police station, he placed the defendant in his office, leaving the door open for safety and so the defendant did not get the impression that he was not free to leave. Good stated

---

The defendant also argues that the court erred in precluding testimony regarding with whom A was living. We decline to review this specific claim. The state objected to this line of questioning on the ground of relevance, and the defendant withdrew the question before the court ruled on the matter. Accordingly, there is no ruling for this court to review on appeal.

that he also told the defendant that he was free to leave at any time. Good testified that the defendant appeared nervous and claimed to be tired because he had not slept, had been drinking alcohol and that his memory was unclear. According to Good, the defendant did not appear to be under the influence of alcohol at that time. During this first interview, the defendant admitted to drinking alcohol with A, but denied having sexual intercourse with her. Good explained that he took notes during the interview and then typed them into a statement, which the defendant was asked to proofread for accuracy. According to Good, the defendant "looked at the paper for a considerable amount of time," indicated that he had read it and that he had no corrections. The defendant swore to the statement's accuracy, initialed the bottom of each page and signed the document.[7] Good stated that the entire interview lasted approximately one hour and fifteen minutes.

Good spoke with the defendant again the following day, on May 22, 2007, after he had interviewed A. Good once again drove the defendant to the police station, and Good testified that he again informed the defendant that he was not under arrest and was free to leave at any time. Good described the defendant's demeanor as nervous yet cooperative and more at ease than the day before. Good stated that he disclosed to the defendant the additional details A had provided and that as the conversation progressed the defendant admitted that some of A's allegations may be accurate. Good explained that he typed a written statement, dated May 22, 2007, which the defendant signed after reading, making a correction and confirming its accuracy. According

---

[7] Good explained that standard warnings pursuant to *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), were on the top of each page of the defendant's respective statements, and that the defendant indicated that he had read the entire statement, including the *Miranda* warnings, but Good denied specifically discussing the warnings with the defendant.

to Good, the second statement was completed in approximately half an hour.

The defendant testified at the hearing that he did not recall going to the police station with Good on May 21, 2007, but that he did remember going on May 22, 2007. The defendant could not clearly recall the substance of either of his typed statements, whether he was informed that he had a right to have an attorney present or whether he actually read the typed statements before he signed them. As to the May 22, 2007 interview, the defendant recalled that he felt nervous, scared and "bombarded . . . ." The defendant also argued that during the May 22, 2007 interview, an officer told him that the DNA results came back positive "and that there's no way out . . . ." Good testified that he may have informed the defendant that the police were attempting to gather DNA evidence, but did not recall telling the defendant that the police already had DNA evidence that could be used against him.

The court issued a ruling from the bench denying the defendant's motion to suppress. Based on the totality of circumstances, the court found that the defendant was not in custody on either day when he was questioned by the police and that Good drove the defendant to the station under the same conditions on both days. Specifically, Good was dressed in plain clothes and transported the defendant in an unmarked car, the defendant was not handcuffed, the defendant was free to leave at any time and was aware that he was free to leave, and the defendant indicated that he wanted to cooperate with the investigation.[8] The court noted that

[8] The court specifically observed that "[the defendant] was never put in handcuffs by the police. He was not taken in a marked car. [The car had] no . . . barrier placed between [the defendant] and the officer who drove him. [Good testified] that the defendant . . . didn't have the ability to drive, so [he offered] to drive [the defendant] to the police station. . . . [B]y [the defendant's] own testimony, he indicated he was trying to cooperate with the police. And [the defendant] was never told at any time that he could not leave the police station. He was not under arrest at any time."

although the defendant had been drinking the night before he gave his first statement, there was no indication that he was intoxicated at the time he gave the statement on May 21, 2007. Moreover, while Good's testimony described the defendant as nervous, occasionally crying and scared, the court determined that these were normal reactions under the circumstances when considering the nature of A's allegations.

The court further concluded that the defendant's statements were voluntary and that his will was not overborne. In so concluding, the court observed that there was no medical testimony indicating that the defendant suffered from a condition affecting his will or ability to understand. Crediting Good's testimony, the court also found that the defendant read and signed both statements. Specifically, the defendant made a correction to his May 22, 2007 statement, from which the court inferred that the defendant absolutely read the statements, knew what he was signing, was not forced to sign the statements, and that his will was not overcome by any of the actions of the officers or any condition on his behalf that would leave him incapable of making a knowing and voluntary statement. The statements were admitted as full exhibits at the defendant's trial and read to the jury.

We first address the defendant's argument that the court improperly determined that he was not in custody at the times that he gave his statements. The defendant contends that on both days the police made statements that created a police dominated atmosphere that would cause a reasonable person to believe that he was not free to leave. We disagree.

At the outset, we set forth the standard of review that will guide our analysis of these claims. "Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined.

A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . We will not overturn the trial court's factual finding that the defendant was not in custody unless it was clearly erroneous . . . but [w]e will, however, carefully review the record to ascertain whether the trial court's finding is supported by substantial evidence. . . .

"Two threshold conditions must be satisfied in order to invoke the warnings constitutionally required by *Miranda* [v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)]: (1) the defendant must have been in custody; and (2) the defendant must have been subjected to police interrogation. . . . A person is in custody only if, in view of all of the surrounding circumstances, a reasonable person would have believed he was not free to leave. . . . The ultimate inquiry [therefore] is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Citations omitted; internal quotation marks omitted.) *State* v. *Mucha*, 137 Conn. App. 173, 188–89, 47 A.3d 931, cert. denied, 307 Conn. 912, 53 A.3d 998 (2012).

In concluding that the defendant was not in custody at the time he made either statement, we examine several relevant factors. First, the defendant voluntarily accompanied the police for questioning on both days and indicated that he wanted to cooperate with the investigation. See *State* v. *Bridges*, 125 Conn. App. 72, 80–81, 6 A.3d 223 (2010), cert. denied, 300 Conn. 931, 17 A.3d 68 (2011). Second, the defendant was informed that he was not under arrest and was free to leave at any time on both occasions. "[A] fact finder reasonably might

find that a reasonable person would feel free to leave when that person was told repeatedly that he could do so." (Internal quotation marks omitted.) Id., 81. Additionally, the record reveals testimony that the defendant was not subjected to exceedingly lengthy interviews. See id., 81–82. Finally, the defendant was not physically restrained or subjected to other formalities of an arrest. Specifically, for both interviews the defendant was not handcuffed, he was transported in an unmarked car without a partition, he was interviewed in the detective's office while the door was left open, and there is no evidence that officers brandished their weapons. "Factors of this type strongly support a determination that a reasonable person in the defendant's position would not have believed that he was in police custody." Id., 82. Having reviewed the facts and evidence in the entire record, we conclude that a reasonable person in the defendant's position would not have believed that he was in custody on either occasion. Accordingly, we agree with the court that the defendant did not demonstrate that he was entitled to *Miranda* warnings and conclude that the court properly denied the defendant's motion to suppress evidence on that ground.

The defendant also argues that the court erred in admitting his May 21, 2007 and May 22, 2007 statements because both were involuntary. We disagree. "In order to be voluntary a confession must be the product of an essentially free and unconstrained choice by the maker. . . . [T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . .

"The ultimate question of whether a defendant's will has been overborne, thus resulting in an involuntary

statement in a particular case, involves . . . an assessment of the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. . . . Furthermore, the scope of review is plenary on the ultimate question of voluntariness, but the trial court's findings regarding the circumstances surrounding the defendant's questioning and confession are findings of fact that will not be overturned unless they are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *State* v. *Stephenson*, 99 Conn. App. 591, 596–97, 915 A.2d 327, 282 Conn. 903, 919 A.2d 1037 (2007).

We are not persuaded that the circumstances under which the defendant provided his statements were coercive. First, the defendant has not pointed us to any evidence in the record indicating that he was particularly susceptible to coercion, and the court determined that there was no evidence indicating that the defendant was incapable of making a voluntary and knowing statement. The defendant maintains that his use of alcohol the evening prior to giving his first statement rendered his statement involuntary. "The use of drugs or the ingestion of alcoholic beverages does not, in and of itself, render a subsequent confession inadmissible, but it is one factor to be considered in judging the voluntariness of a statement." (Internal quotation marks omitted.) *State* v. *Abreu*, supra, 106 Conn. App. 293. Good testified that the defendant did not appear to be intoxicated during the May 21, 2007 interview, and indeed the court specifically found that the defendant was not intoxicated at the time he gave this statement. Furthermore, the record indicates that the defendant went to the station voluntarily, wanted to cooperate with the investigation and was not subjected to lengthy periods of grueling interrogation. See id., 293–94. We do not find persuasive the defendant's argument that his fragile emotional state rendered his statements involuntary. To

the contrary, the court concluded that the defendant's emotional reactions were appropriate in light of the seriousness of A's allegations, and "the fact that [a] defendant was . . . upset emotionally, [does not] necessarily render his statements inadmissible." (Internal quotation marks omitted.) Id., 294.

Based on our scrupulous review of the record, we conclude that the court's findings are supported by the record and, therefore, are not clearly erroneous. We further conclude that the court properly determined that the defendant's statements were voluntary. Accordingly, we conclude that the court did not err in denying the defendant's motion to suppress on that basis.

The judgment is affirmed.

In this opinion the other judges concurred.