STATE OF CONNECTICUT *v.* RAFAEL ABREU
(AC 28450)

Flynn, C. J., and Harper and Peters, Js.

 

Argued November 15, 2007—officially released March 11, 2008

*James B. Streeto*, assistant public defender, for the appellant (defendant).

*Timothy J. Sugrue,* senior assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terence D. Mariani,* senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, C. J. The defendant, Rafael Abreu, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a (a).[1] On appeal, the defendant claims that the trial court (1) violated his right to present a defense by excluding evidence of (a) the victim's alleged drug activity and (b) the defendant's knowledge of the prior arrests of the victim, the victim's alleged status as a fugitive, the victim's use of an alias and the victim's blood alcohol content on the night of the shooting and (2) improperly denied his motion to suppress the statement he gave to the police. We disagree with the defendant's principal evidentiary claim and conclude that he may not ask the jury to infer from the victim's alleged status as a drug dealer that the victim was armed and about to use deadly physical force against him and may not rely on that improper inference as justification for killing the victim in self-defense. See *State* v. *Lewis,* 220 Conn. 602, 619–20, 600 A.2d 1330 (1991). Evidence of the victim's alleged involvement in drug activity was, thus, properly excluded. We also conclude that the court properly excluded evidence of the defendant's knowledge of the prior arrests of the victim, the victim's alleged status as a fugitive and the victim's blood alcohol content on the night of the shooting and, therefore, reject all of

---

[1] General Statutes § 53a-55a (a) provides in relevant part: "A person is guilty of manslaughter in the first degree with a firearm when he commits manslaughter in the first degree as provided in section 53a-55, and in the commission of such offense he uses, or is armed with and threatens the use of or displays or represents by his words or conduct that he possesses a pistol, revolver, shotgun, machine gun, rifle or other firearm. . . ."

the defendant's evidentiary claims. Finally, because the defendant has not shown that the court's findings as to the voluntariness of his confession were clearly erroneous, and because the court's factual determinations support the finding that the defendant's confession was voluntary, we conclude that the court properly denied the motion to suppress the defendant's confession and, accordingly, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. Several days prior to October 20, 2002, the defendant and some others, including Elvis Castro and Castro's girlfriend, Vanessa Garcia, were at the Los Amigos pool hall in Waterbury. At some point, an altercation ensued between the defendant and a group of patrons,[2] which included the victim, Juan Carlos Martinez, also known as Jeremy Contres. During the altercation, the defendant was beaten and struck in the head with beer bottles.

On October 20, 2002, the defendant, Castro and a few others went to the Eldorado Cafe in Waterbury. While having drinks, the defendant recognized one or more persons in the cafe as having been part of the group of people who had been at the pool hall days earlier and had beaten him. Thereafter, the defendant exited the cafe. A confrontation subsequently occurred between the defendant, the victim and others. The defendant shot the victim, and the victim died. The defendant admitted shooting the victim but asserted that the shooting had been done in self-defense. The defendant subsequently was arrested. He was charged by information with murder in violation of General Statutes § 53a-54a (a). After a trial to the jury, the defendant was

---

[2] Castro and Garcia testified that the altercation began when the defendant removed a baseball cap from another person's head and refused to return it. The defendant testified that the altercation did not concern a baseball cap.

convicted of the lesser included offense of manslaughter in the first degree with a firearm. The court sentenced the defendant to thirty-eight years imprisonment. This appeal followed. Additional facts and procedural history will be set forth as necessary.

## I

The defendant first claims that the court's exclusion of certain evidence constituted an abuse of discretion and deprived him of his constitutional right to present a defense as guaranteed by the sixth and fourteenth amendments to the United States constitution. Specifically, the defendant argues that the court improperly excluded evidence material to his claim of self-defense. We disagree.

We first set forth our standard of review. "As we recently observed, [a] defendant's right to present a defense does not include a right to present evidence that properly is excluded under the rules of evidence. . . . The sixth amendment to the United States constitution require[s] that criminal defendants be afforded a meaningful opportunity to present a complete defense. . . . The defendant's sixth amendment right, however, does not require the trial court to forgo completely restraints on the admissibility of evidence. . . . Generally, [a defendant] must comply with established rules of procedure and evidence in exercising his right to present a defense. . . . A defendant, therefore, may introduce only relevant evidence, and, if the proffered evidence is not relevant, its exclusion is proper and the defendant's right is not violated. . . .

"The standard of review we apply to a trial court's evidentiary rulings is well settled. Such rulings are entitled to great deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion. . . .

Even when a trial court's evidentiary ruling is deemed to be improper, we must determine whether that ruling was so harmful as to require a new trial. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . In our review, we make every reasonable presumption in favor of upholding the trial court's ruling. . . .

"Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence. . . . To be relevant, the evidence need not exclude all other possibilities; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree. . . . The determination of whether a matter is relevant to a material issue rests within the sound discretion of the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Miller*, 95 Conn. App. 362, 386–88, 896 A.2d 844, cert. denied, 279 Conn. 907, 901 A.2d 1228 (2006).

A

The defendant claims that the court's refusal to allow him to testify regarding the victim's alleged drug activity constituted an abuse of discretion and deprived him of his constitutional right to present a defense as guaranteed by the sixth and fourteenth amendments to the United States constitution. We disagree.

The following additional facts are relevant to our resolution of this issue. At the close of the state's case-in-chief, the court heard an offer of proof concerning certain evidence sought to be admitted by the defendant. The defendant sought to testify that the victim had been engaged in the selling of drugs and that persons engaged in such activity usually carry guns and large amounts of cash. The defendant also sought to testify

that he had been engaged in drug transactions with the victim and the other participants in the pool hall fight and that the initial fight did not concern a baseball cap, but rather concerned a drug transaction that had ended badly. See footnote 2. The defendant claimed that this evidence was admissible as proof of his state of mind, namely, his fear of the victim and his perception that the victim was dangerous and armed, and, therefore, that the evidence was relevant to his claim of self-defense. The court excluded the proffered evidence regarding drug related activity, reasoning: "I'm not trying, [a] drug case. . . . It is confusing the issue at hand. Did [the defendant] intend to cause the death of [the victim]? That's the issue."

The matter was revisited the next morning. The defendant again sought to testify that the pool hall incident was the result of a disagreement concerning a drug transaction but acknowledged that such evidence might be prejudicial and inflammatory. The court repeated its earlier ruling that the evidence related to "a collateral issue at best in terms of his self-defense. . . . [I]t focuses the jury on something other than the issue here. . . . It's not going to be a minitrial on who's a drug dealer, how is he involved in drug dealing. It lends itself to speculation, conjecture, aside from the issue."

At trial, the defendant testified that the pool hall fight did not concern a baseball cap. He also testified that the victim had participated in the fight and had struck him in the head with a beer bottle. He further testified that he had not sought medical attention following the pool hall fight because Castro had told him that he and his family would be in danger from the people who had attacked him at the pool hall if the police became involved. Specifically, the defendant testified that on October 20, 2002, he was in fear of the victim, who had a reputation in the community as being a dangerous and violent person. Additionally, the defendant testified

that as a result of his fear, he had purchased a handgun for protection.

The defendant claims that the excluded evidence was relevant to his state of mind at the time of the shooting. The defendant argues that his proffered testimony that the victim was a drug dealer and that drug dealers are often armed constitutes evidence of the victim's propensity for violence and was relevant to his state of mind. The defendant, however, has failed to demonstrate that the evidence of drug activity on the part of the victim was relevant to the issue before the jury.

The unsubstantiated allegation by the defendant regarding the status of the victim as a drug dealer, without more, was not probative of the victim's propensity for violence under *State* v. *Carter*, 228 Conn. 412, 636 A.2d 821 (1994). In *Carter*, our Supreme Court held that the trial court's denial of the defendant's request to open his case after the defense had rested to allow the introduction of the victim's criminal record, which included a conviction for possession of narcotics with intent to sell, was unreasonable and, therefore, constituted an abuse of discretion. Id., 416–29. Regarding the admissibility of the victim's prior narcotics conviction, the court observed: "Although a drug trafficking conviction, without more, is not likely to be probative of a homicide victim's propensity for violence, notwithstanding the well established correlation between drug dealing and firearms . . . such a conviction may be relevant to the victim's violent character, and therefore to the defendant's claim of self-defense, depending upon the specific facts and circumstances of the case and the conviction. Here, the victim's drug dealing activities were so closely linked to the victim's alleged violent conduct and use of firearms, and to the defendant's alleged fear of the victim, that the victim's recent conviction for possession of narcotics with intent to sell had a direct bearing on the defendant's claim that the

victim was a violent drug dealer whom the defendant had shot and killed in self-defense." (Citations omitted; internal quotation marks omitted.) Id., 424 n.15. In this case, the victim's alleged involvement in drug activity was not based on a criminal conviction but solely on an unsubstantiated allegation by the defendant.

Additionally, a person's status as a drug dealer and the well established correlation between drug dealing and firearms; see, e.g., *State* v. *Cooper*, 227 Conn. 417, 426 n.5, 630 A.2d 1043 (1993); is insufficient to substantiate a belief that such a person is armed or dangerous at the time he is killed. According to *State* v. *Lewis*, supra, 220 Conn. 619–20, evidence that the victim was a drug dealer, if credited, would not have allowed the jury to find that at the time the defendant killed the victim, it was reasonable for him to believe that the victim was about to use deadly physical force or to inflict great bodily harm and that it was necessary to kill the victim to prevent such conduct. Furthermore, in this case, no evidence was adduced or proffered that the victim was armed when the defendant shot him or even that the defendant had ever seen or known the victim to be in possession of a firearm. There was no evidence that drug activity played a role on the night that the victim was shot. Consequently, the excluded evidence was not relevant, as the defendant contends, to put the shooting in proper context.

B

The defendant next claims that the court improperly excluded proffered evidence regarding his knowledge of the prior arrests of the victim, the victim's alleged status as a fugitive, the victim's use of an alias and the victim's blood alcohol content on the night of the shooting. We address each challenged exclusion in turn.

1

During the defendant's offer of proof at the close of the state's case-in-chief, he, inter alia, sought to admit

evidence that he knew that the victim previously had been arrested in other states. The court properly excluded this evidence.

It is undisputed that the victim had never been convicted of any crime. Although specific acts of violence not resulting in a criminal conviction are inadmissible to prove the victim's violent character; *State* v. *DeJesus*, 260 Conn. 466, 482, 797 A.2d 1101 (2002); "[e]vidence of prior bad acts by the victim perpetrated on the defendant may be admissible to show the defendant's state of mind." *State* v. *Collins*, 68 Conn. App. 828, 836, 793 A.2d 1160, cert. denied, 260 Conn. 941, 835 A.2d 58 (2002). The specific acts leading to the victim's arrest in other states are not admissible under *Collins* because those acts did not involve the victim and the defendant. We conclude, therefore, that the court did not abuse its discretion in precluding the defendant from testifying as to his knowledge of the prior out-of-state conduct and subsequent arrests of the victim.

2

The defendant also sought to admit evidence that he was aware that the victim was a fugitive from other states, arguing that the victim's status as a fugitive was relevant to his state of mind and the reputation of the victim. The court properly excluded this evidence. "While relevant evidence is generally admissible, the trial judge has a certain amount of discretion in excluding such evidence; matters likely to mislead a jury, or to be misused by it, or to unnecessarily complicate a case, or of slight, remote, or conjectural significance, ought not to be admitted." (Internal quotation marks omitted.) *State* v. *Gooch*, 186 Conn. 17, 23, 438 A.2d 867 (1982). Without some specific connection between the victim's alleged status as a fugitive and the defendant's interaction with the victim, the proffered testimony

bore no logical connection to the victim's propensity for violence or aggression toward the defendant.

3

The defendant also proffered evidence that the victim used the alias, Jeremy Contres, in order to explain references to the victim by this name during the defendant's discussions with the police. The court saw no "problem with that question" and admitted the evidence for that purpose. The defendant seems to claim that the court improperly failed to admit the evidence for the purpose of showing the defendant's state of mind at the time of the shooting. The trial record before us does not indicate that he proffered the evidence for any purpose other than to explain the use of the name, Jeremy Contres, during the defendant's interview with police.

4

Finally, the defendant proffered testimony that, on the basis of his observations, he believed that the victim may have been intoxicated. The defendant claimed that intoxication would have led the victim to have an increased level of aggression, and, therefore, evidence of the victim's intoxication was relevant to whether the victim was the initial aggressor and relevant to the defendant's state of mind at the time of the shooting, namely, the reasonableness of his fear. The defendant sought to call a toxicologist to testify that the autopsy records indicated that the victim's blood alcohol content was 0.17 of a percent. The court permitted the defendant to testify regarding his observations on which he based his belief that the victim was intoxicated. The court, however, excluded evidence regarding the victim's blood alcohol content to show that the victim was the aggressor, absent some evidence that the alcohol in the victim caused him to be more aggressive. The court offered to excuse the jury if and when such connective evidence were proffered. The defendant

never proffered evidence establishing such a connection. The court, therefore, properly determined that the defendant's proffer regarding the victim's blood alcohol content was deficient because it lacked any evidence connecting the victim's level of intoxication with a tendency toward aggression.

Accordingly, we conclude that to the extent that the court excluded evidence as claimed by the defendant, such exclusion was not improper.

## II

The defendant next claims that the court improperly denied his motion to suppress the statement he gave to the police. Specifically, the defendant contends that his statement was involuntary and the consequence of pressures exerted by the police. We disagree.

Our standard of review of the court's findings and conclusions in connection with a motion to suppress is well established. "A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [When] the legal conclusions of the court are challenged, [our review is plenary, and] we must determine whether they are legally and logically correct and whether they find support in the facts set out in the court's memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Brown*, 279 Conn. 493, 514, 903 A.2d 169 (2006).

"[T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined . . . . The ultimate test remains . . . . Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against

him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process. . . . [W]e review the voluntariness of a confession independently, based on our own scrupulous examination of the record. . . .

"We make such a determination by examining the totality of the circumstances surrounding the confession, and determining whether the confession [was] the product of an essentially free and unconstrained choice by the maker. . . . Factors that may be taken into account, upon a proper factual showing, include: the youth of the accused; his lack of education; his intelligence; the lack of any advice as to his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment, such as the deprivation of food and sleep." (Internal quotation marks omitted.) *State* v. *Spells*, 76 Conn. App. 67, 88, 818 A.2d 808, cert. denied, 266 Conn. 901, 832 A.2d 67 (2003).

"The admissibility of a confession is initially a question of fact for the trial court. . . . In view of the constitutional dimension of the issue, the trial court's finding of voluntariness is, however, subject to an independent and scrupulous examination of the entire record to ascertain whether the trial court's finding is supported by substantial evidence. . . . We review the record in its entirety, and are not limited to the evidence before the trial court at the time the ruling was made on the motion to suppress." (Citations omitted; internal quotation marks omitted.) *State* v. *Whitaker*, 215 Conn. 739, 742, 578 A.2d 1031 (1990).

Our examination of the record relating to the interrogation reveals the following. In his motion to suppress filed April 12, 2005, the defendant alleged, inter alia,

that his statement had been given involuntarily in violation of *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). On May 5, 2005, a hearing was held on the motion. Detective Sergeant Eugene Coyle and Detective Michael O'Loughlin were the only witnesses who testified at the hearing on the motion to suppress.

Coyle testified that when he first arrived on the scene of the shooting, he approached the defendant, who at that time already was in custody, introduced himself and asked the defendant if he knew what had happened. In response, the defendant stated that he had nothing to say. Subsequently, the defendant was transported to a holding cell. At approximately 2:30 a.m., Coyle entered the holding cell, advised the defendant of his *Miranda* rights and asked him if he knew anything about the murder. The defendant again told Coyle that he had nothing to say, and Coyle left the holding cell. Later that morning, at approximately 8:30 a.m., Coyle returned again to the holding cell and informed the defendant that after interviewing numerous individuals, the defendant had been implicated as the shooter in the murder investigation. The defendant agreed to speak with Coyle, was taken to an interview room and was advised again of his *Miranda* rights, which he acknowledged and waived in writing. The defendant thereafter provided the police with the information contained in his written statement.[3]

O'Loughlin testified that he was present in the interview room while Coyle conducted his interview of the defendant. O'Loughlin observed the defendant receive and waive his *Miranda* rights and give his statement. O'Loughlin testified that the defendant was subjected to no threats of any kind.

---

[3] In his written and signed statement, the defendant admitted to shooting the victim on the night in question.

The defendant argued at the suppression hearing that his statement had been obtained unlawfully because "he wasn't given the opportunity . . . to get a lawyer, talk to a lawyer. . . . He's there for approximately twelve hours. He does not see a lawyer. . . . That would be [the] claim, Your Honor." The court denied the motion and found that the defendant was in custody, *Miranda* warnings were given and that the defendant made a knowing, voluntary and intelligent waiver of those rights. The court also found that the defendant's confession was given in a free and voluntary manner absent any compulsion by the police.

Although he did not testify at the suppression hearing, the defendant did testify at trial. He stated that while at the police station he was scared, in denial and was crying, felt sick to his stomach and was told by Coyle that if he did not cooperate with the police, he would "never see the light of day . . . again." He also testified that he had consumed alcohol prior to giving his statement to the police. On appeal, the defendant argues that we must analyze the voluntariness of his confession on the basis of the entire record, including his trial testimony. In doing so, we conclude that the court's finding that the defendant's confession was given in a free and voluntary manner must stand.

After informing the defendant that he had been implicated as the shooter in the murder investigation, the defendant agreed to speak with Coyle. The defendant was advised of his *Miranda* rights for a second time and waived those rights in writing. "[A] warning at the time of the interrogation is indispensable to overcome its pressures and to [e]nsure that the individual knows he is free to exercise the privilege at that point in time." (Internal quotation marks omitted.) *State* v. *Correa*, 241 Conn. 322, 338, 696 A.2d 944 (1997). There was no evidence offered that the defendant had requested an attorney.

The defendant maintains that circumstances of his interrogation were coercive, that he was only twenty years old and had completed only one year of high school, that he had been held in police custody for twelve hours prior to interrogation, that he had had at least some drinks prior to his arrest and that there was no evidence that he was provided with either food or drink at the police station. Although these factors are relevant to the voluntariness determination, they are not dispositive. "The use of drugs or the ingestion of alcoholic beverages does not, in and of itself, render a subsequent confession inadmissible, but it is one factor to be considered in judging the voluntariness of a statement." *State* v. *Madera*, 210 Conn. 22, 42, 554 A.2d 263 (1989). The defendant's trial testimony that he consumed only two beers at the cafe twelve hours prior to giving his statement to police undermines any suggestion that the influence of alcohol played a role in his decision to confess. We also note that the defendant was in police custody for approximately twelve hours and interviewed by police for approximately one hour before giving his written confession. See *State* v. *Carter*, 189 Conn. 631, 638, 458 A.2d 379 (1983) (eight hour period of detention before having given third confession, although substantial, "does not remotely approach the length of those interrogations held to be so objectionable on that ground among others as to warrant reversal of a finding by a trial court that a confession was voluntary"); see also *State* v. *Lapointe*, 237 Conn. 694, 734, 678 A.2d 942 (eight and three-quarter hour police interview), cert. denied, 519 U.S. 994, 117 S. Ct. 484, 136 L. Ed. 2d 378 (1996); *State* v. *DeAngelis*, 200 Conn. 224, 233, 511 A.2d 310 (1986) (ten and one-half hour police interview).

In this case, there is no evidence that the police officers who interviewed the defendant subjected him to

protracted periods of grueling interrogation. Additionally, the defendant has not pointed us to anything in the record that would indicate that he was susceptible to coercion on the basis of his age or level of education. See *State* v. *Perez*, 218 Conn. 714, 722, 591 A.2d 119 (1991) (age fourteen); *State* v. *Spyke*, 68 Conn. App. 97, 101, 792 A.2d 93, (age sixteen; failed to complete ninth grade), cert. denied, 261 Conn. 909, 804 A.2d 214 (2002). Although the defendant claims that there was no evidence in the record that he was provided with either food or drink at the police station, he does not direct us to any evidence in the record that would indicate that he was denied such necessities. The defendant also argues that his statement was involuntary because he was in a fragile emotional state. However, "the fact that [a] defendant was . . . upset emotionally, [does not] necessarily render his statements inadmissible." (Internal quotation marks omitted.) *State* v. *Madera*, supra, 210 Conn. 44.

In this case, other relevant factors also indicate that the defendant did not confess because his will to remain silent was overborne but, rather, that he confessed of his free will. The defendant testified at trial that the police did not hurt him physically and that he decided to talk to the police in the morning after the incident because Coyle informed the defendant that he had spoken with Castro, and he thought Castro had told Coyle the truth when they spoke, and, accordingly, the defendant wanted to speak with Coyle. The defendant also had prior experience with the criminal justice system. His prior exposure to the criminal justice system, as a result of at least five prior arrests in a number of different states, is relevant to his claim of police coercion in obtaining the confession. See id., 45. Given this prior experience, we conclude that at the time he gave his statement to the police, the defendant was well

acquainted with the criminal justice system.[4] Accordingly, Coyle's alleged "light of day" comment was unlikely to have had an effect on the defendant. Taken as a whole, the officer's comment did not constitute conduct "such as to overbear [the defendant's] will to resist and bring about confessions not freely self determined . . . ." (Internal quotation marks omitted.) *State* v. *Boscarino*, 204 Conn. 714, 740, 529 A.2d 1260 (1987). On the basis of our scrupulous and independent review of the entire record, we conclude that the state has proven the voluntariness of the defendant's confession by a preponderance of the evidence. See *State* v. *Lawrence*, 282 Conn. 141, 177, 920 A.2d 236 (2007).

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] The defendant chose not to testify at the pretrial hearing on his motion to suppress. At trial, however, he testified as to his fragile emotional state and that Coyle told him that if he did not cooperate, he would "never see the light of day . . . again." We also consider it significant that the defendant never asked the trial court to reconsider its findings made at the suppression hearing in the light of his trial testimony. See *State* v. *Lewis*, 60 Conn. App. 219, 245 n.28, 759 A.2d 518, cert. denied, 255 Conn. 906, 762 A.2d 911 (2000).